THE NATIONAL UNION *et al.* Appellees, *vs.* MARGARET E. KEEFE *et al.* Appellants.

*Opinion filed April 23, 1914—Petition stricken June 3, 1914.*

1. BENEFIT SOCIETIES—*articles of association cannot include a class of beneficiaries not included in statute.* A benefit society has no power to include in its articles of association a class of beneficiaries not included in the statute under which the society is organized, and in so far as the articles of association extend beyond the statute they confer no authority to designate beneficiaries.

2. SAME—*powers of benefit society cannot be extended by a by-law.* The powers of a benefit society are derived from the statute, and may be restricted, but not increased, by the articles of association; but the by-laws of the association merely have to do with the manner of conducting the business and have no effect to extend the powers of the society.

3. SAME—*benefit society may restrict its powers by articles of association.* A benefit society may, by its articles of association, restrict the class of beneficiaries so as to exclude classes embraced in the statute, and in such case only the classes enumerated in the articles of association are eligible, and no others can be made eligible without an amendment of the articles of association. (*Wallace* v. *Madden*, 168 Ill. 356, explained.)

4. SAME—*extent to which an amendment of statute ipso facto amends charters of benefit societies.* An amendment of a statute by which the class of beneficiaries of benefit societies is restricted *ipso facto* amends the charters of benefit societies because they

cannot go beyond the statute, but an amendment which enlarges the class of beneficiaries does not operate to amend the charters.

5. SAME—*when an amended statute does not, ipso facto, render an ineligible beneficiary eligible.* Where the beneficiary named in a certificate is ineligible under the then existing statute and the articles of association of the society, an amendment of the statute which would render him eligible does not, *ipso facto,* have that effect where the society does not amend its articles of association as contemplated by the statute, even though it had amended its by-laws, in an attempt to enlarge the class of beneficiaries, before the amendatory statute was passed.

6. SAME—*effect of the amendatory statute authorizing existing societies to continue in business.* An amendatory statute enlarging the class of beneficiaries of benefit societies, which authorizes existing societies to continue in business by complying with certain requirements as to reports, only authorizes them to continue to exercise the powers they possess under their original charters, unless they amend their charters in accordance with the provisions of the new act. (*Grimme* v. *Grimme,* 198 Ill. 265, followed.)

7. SAME—*when eligibility of member is governed by the charter and not by the statute.* If the beneficiary named in the certificate is at that time ineligible under the statute and the charter of the society, and the society does not amend its charter to conform to a subsequent amendment of the statute enlarging the class of beneficiaries, the eligibility of the beneficiary is to be determined by the charter and not by the statute.

8. SAME—*by-law contrary to articles of association is not binding.* A by-law purporting to extend the class of beneficiaries contrary to the articles of association is without effect and is not binding upon a member even though he has assented to it.

9. SAME—*when an ineligible beneficiary is not entitled to fund.* Neither the act of a member in naming a beneficiary not within the class designated by the articles of association, nor the act of the association in making its certificate payable to such beneficiary, will entitle the latter to the fund as against the eligible beneficiaries designated by the law and the articles of association.

10. SAME—*extent to which ineligible beneficiary is entitled to reimbursement.* An ineligible beneficiary who has paid the assessments relying in good faith upon his appointment as beneficiary is entitled to be reimbursed for such payments, with interest, but he is not entitled to any lien on the fund as a creditor, for advances which he may have made to the member in reliance upon his appointment.

APPEAL from the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

CANNON & POAGE, and JOHN B. HEINEMANN, for appellants.

CHARLES J. KAVANAGH, (GEORGE P. KIRBY, and MILLER, STARR, PACKARD & PECKHAM, of counsel,) for appellee the National Union.

WILLIAM A. DOYLE, (JOSEPH J. THOMPSON, of counsel,) for appellee James E. Keefe.

Mr. JUSTICE DUNN delivered the opinion of the court:

The question in this case is whether the amount of a beneficiary certificate issued by the National Union to Edward F. Keefe shall be paid to James E. Keefe, the beneficiary named, or to appellants, Margaret E. Keefe and Celeste Keefe, the widow and daughter of Edward F. Keefe.

In 1892 Edward F. Keefe, who was then unmarried, became a member of the National Union, a mutual benefit society organized under the laws of Ohio, and a certificate was issued to him for $5000, payable, upon his death in good standing in the order, to his brother, James E. Keefe. Edward F. Keefe afterward married, and in 1906 died, leaving a widow and one child, who are the appellants. It is claimed by the appellants that James E. Keefe was not eligible as a beneficiary, and this is the decisive question in the case.

The National Union was incorporated in 1881 under section 3630 of the Revised Statutes of Ohio, which authorized the organization of a company or association "for the purpose of mutual protection and relief of its members and for the payment of stipulated sums of money to the

families or heirs of deceased members of such company or association." Its articles of association stated that it was organized to establish a benefit fund, to be paid to "the husband, wife, orphans, family or other dependents, as the member may direct." Its by-laws were amended in 1887 so as to authorize the designation, as beneficiaries, of "members of the family of the deceased who are related to him by consanguinity or affinity." When the certificate was issued Edward F. Keefe was living with his parents and James E. Keefe was married and living in his own home. He was not a member of Edward F. Keefe's family within the meaning of the statute or the articles of association of the National Union and was in no way dependent on him. (*Supreme Council of Catholic Benevolent Legion* v. *McGinness,* 59 Ohio St. 531; *Holnback* v. *Wilson,* 159 Ill. 148; *Rock* v. *Haas,* 110 id. 528; 19 Cyc. 450.) It is insisted, however, that by subsequent legislation extending the classes of persons to whom payment of death benefits might be made so as to include blood relatives of the member, the designation of James E. Keefe as beneficiary has been made valid. In 1896 the legislature of Ohio passed an act regulating fraternal beneficiary societies, orders and associations, providing that "payment of death benefits shall be to the families, heirs, blood relatives, affianced husband or affianced wife of or to persons dependent upon the members." It was provided that such associations should be governed by that act and should be exempt from the insurance laws of the State, and that any such societies of that or any other State, province or territory then operating in the State might continue their business by complying with the provisions of the act regulating annual reports and the designation of the superintendent of insurance as the person upon whom process may be served. Every association doing business in the State was required to file a report with the superintendent of insurance annually, on or before the first day of March in each year, and to appoint

the superintendent of insurance its attorney for the service of process. The superintendent of insurance was required, upon the application of any association having a right to do business in the State, to issue a permit, in writing, authorizing such association to do business in the State, for which an annual fee of $25 was required. In 1899 the National Union again amended its by-laws so as to authorize payment of death benefits only to "the families, heirs, blood relations, affianced wife of or persons dependent upon the member." The act of 1896 was repealed in 1904 by another on the same subject, which confined the payment of death benefits to "the family, heirs, relatives by blood, marriage or legal adoption, affianced husband or affianced wife, or to a person or persons dependent on the member." Section 13 was as follows:

"Sec. 13. *Powers retained—re-incorporation—amendments.*—Any association now engaged in transacting business in this State may exercise, after the passage of this act, all of the rights conferred thereby and all of the rights, powers and privileges now exercised or possessed by it under its charter or articles of association not inconsistent with this act, or it may be re-incorporated hereunder. But no association already organized shall be required to re-incorporate hereunder, nor shall it be required to adopt the rates prescribed herein for new associations, in order to avail itself of the privileges of this act, and any such association may amend its articles of association, from time to time, in the manner provided therein, or in its constitution or laws, and all such amendments shall be filed with the superintendent of insurance, and shall become operative upon such filing unless a later time be provided in such amendments or in its articles of association, constitution or laws."

The articles of association of the National Union were somewhat broader than the act under which it was originally organized, for the latter limited the persons who might be named as beneficiaries to families or heirs of the

deceased member, while the articles of association extended the class to other dependents. The association could not, however, go beyond the persons named in the statute, and the articles of association, so far as they purported to do so, conferred no authority. The articles of association have never been amended. The by-laws which provide for the manner in which the business of the association shall be conducted have been amended, but the powers of the association cannot be extended by a by-law. Its powers are derived from the statute, and may be limited, but not increased, by its articles of association. In ascertaining the scope of the powers of a corporation organized under a general law the court looks at the certificate of the promoters and the articles of incorporation, and its powers are such, only, as are therein specifically enumerated and such others as are incidental or necessary to carry the express powers into effect. (*Rockhold* v. *Canton Masonic Mutual Benevolent Society,* 129 Ill. 440.) A benevolent association may restrict the objects of its benevolence to classes more limited than those which the statute authorizes it to include, and in such case persons not within the restricted classes specified cannot receive the benefits of the association. (*Norwegian Old People's Home Society* v. *Wilson,* 176 Ill. 94.) In determining the classes who can take as beneficiaries the court will look only to the certificate of organization and not to the statute under which the society is organized, when the statute includes classes of beneficiaries more extensive than those included in the certificate. (*Murphy* v. *Nowak,* 223 Ill. 301.) In *Wallace* v. *Madden,* 168 Ill. 356, it is said that after the society became organized under the statute it had no right to enlarge the class of beneficiaries mentioned in the statute or curtail the class therein mentioned. It was not stated what the articles of incorporation of the order there concerned contained and the objects of the order set forth in its charter are not given. What was actually held was, that after organiza-

tion under the statute any provision in the constitution and by-laws inconsistent with or not authorized by the statute would be a nullity. The constitution and by-laws stand on the same footing but the charter of the association stands on a different basis. Attention was called to this case and to the distinction between the charter and the constitution and by-laws of such association in the case of *Grimme* v. *Grimme*, 198 Ill. 265, in which it was held that the order had no right to go beyond the powers contained in its charter, which restricted the class of beneficiaries within narrower limits than the statute.

The act of 1896 authorized all associations at that time operating in the State to continue their business, and the only conditions imposed were, that they should thereafter comply with the provisions of the act regulating annual reports and the designation of the superintendent of insurance as the person upon whom process might be served. The National Union performed these conditions and received from the superintendent of insurance a license to transact its appropriate business for the current year, and this license has been since renewed annually. This license did not, however, confer any authority except that given by the statute to "continue its business." This business, as was said in *Grimme* v. *Grimme, supra,* in construing a similar statute of Missouri, was "evidently the business which it had by previous laws been permitted to begin and carry on, and, as we interpret the statute, with the same powers that previous statutes had conferred upon it and no more." The statute did not purport to remove the limitations imposed by the articles of association. An amendment of the articles was necessary to enable the association to avail itself of the wider scope of the statute.

It is argued that section 13 of the act of 1904, quoted above, of its own force enlarged the powers of the association by conferring upon it the right to exercise all the powers conferred by that act, as well as all the rights, pow-

ers and privileges already exercised or possessed by it under its charter or articles of association not inconsistent with the act. It is true that the section provides that no association already organized shall be required to re-incorporate under the act or adopt the rates prescribed for new incorporations in order to avail itself of the privileges of the act, but in the same sentence it is said that any such association may amend its articles of association, from time to time, in the manner provided therein or in its constitution or laws, and all such amendments shall be filed with the superintendent of insurance, and shall become operative upon such filing unless a later time be provided in such amendments or in its articles of association, constitution or laws. No occasion for the mention of the amendment of the articles of association in this connection is apparent unless it was intended to require the amendment as a condition to the exercise of the powers conferred. The section grants to certain associations the right to exercise certain privileges or to re-incorporate under the act. It further declares that re-incorporation is not essential to the exercise of those privileges, but that the right to exercise them may be acquired by an amendment of the articles of association. The section does not declare, and in our judgment it is not its meaning, that associations which have limited in their articles of association the persons who may be designated beneficiaries in their certificates may proceed, in disregard of their articles of association and without amendment thereof, to issue certificates payable to the additional classes allowed by the statute.

Our attention has been called to two cases in which it has been held that the act of the legislature of Ohio of 1896 of its own force amended the charters of associations organized, as was the National Union, under section 3630 of the Revised Statutes of Ohio. They are *Sturges* v. *Sturges,* 126 Ky. 80, (102 S. W. Rep. 884,) and *Finnell* v. *Franklin,* 134 Pac. Rep. (Colo.) 122. The association concerned

in each of the cases was the same and was organized in 1894, at which time section 3630 authorized the formation of mutual benefit companies for "the payment of stipulated sums of money to the families, heirs, executors, administrators or assigns of the deceased members." In each case it was held that the act of 1896, which limited the payment of benefits so as to exclude the executors, administrators or assigns of the deceased, made a designation of the mem- ber's estate as the beneficiary void. These cases are in ac- cordance with the cases cited, which hold that the powers of the association are to be determined from a consideration of both the statute and the articles of incorporation. The beneficiaries must be within the classes designated by the statute and also within those designated by the articles of incorporation. The charter is limited by the statute and the beneficiaries are limited by the charter. An amendment of the statute which restricts the class of beneficiaries neces- sarily amends the charter, which cannot go beyond the statute, but an amendment which adds to the beneficiaries does not amend the charter, which does not necessarily in- clude all the objects authorized by the statute.

The cases of *Massachusetts Catholic Order of Foresters* v. *Callahan,* 146 Mass. 391, and *Marsh* v. *Supreme Council American Legion of Honor,* 149 id. 512, are cited as hold- ing that an act enlarging the classes of beneficiaries applies to existing societies and certificates, and such an act was so applied in those cases. The charters of the societies con- cerned in those cases are not set out in the Reports, and it does not appear that by their terms the powers of the associ- ation were so restricted as not to include the more extensive class of beneficiaries when authorized by an amendment of the statute. In the first case it is said: "We have no oc- casion to consider whether a beneficiary association might not, by its constitution, so limit itself in its operation that its endowments should be only for the benefit of one or more classes of those whom it might lawfully entitle there-

to, as for the widows only, or orphans only, of deceased members. We find no such intention manifested by this association." In the other case it is said that even if the corporation might have refused to allow the wider designation permitted by the statute, it is found that it did not, and was ready, had the formalities required by it been complied with, to accept the mother of the member as the beneficiary.

Neither the amendment to the by-laws of the National Union in 1894 and 1899, which provided that "payment of death benefits shall only be made to the families, heirs, blood relations, affianced wife of or persons dependent upon the member," nor the receipt of assessments after the enactment of the statutes of 1896 and 1904, had the effect to make valid the designation of the brother as a beneficiary. Such designation, while within the statute, was not within the charter of the association, and it is to both the statute and the charter the court must look to ascertain the powers of the association. The association has no authority to create a fund for other persons than the classes specified in the law and its charter, and a by-law professing to extend such classes cannot change the power of the association as stated in its charter. A by-law contrary to the charter of the association is not binding upon a member even though he has assented to it. (Niblack on Benefit Societies,—2d ed.—41, 311.) Neither the act of the member in naming a beneficiary not within the authorized classes, nor the act of the association in making its certificate payable to such beneficiary, can deprive the beneficiaries designated by the law and the charter of the association of their right to the fund.

Our conclusion is that James E. Keefe was ineligible as a beneficiary of the fund and that the appellants were entitled to it, the widow to one-third and the daughter to two-thirds.

It is contended that, independent of the question of eligibility, James E. Keefe is entitled to reimbursement for the assessments paid by him on account of the certificate and for the sums advanced in reliance upon the policy as security for their re-payment.  We have held that where the beneficiary named in a certificate like the one involved here is ineligible as such beneficiary but has paid the assessments in good faith relying upon his appointment as beneficiary, he is entitled to be reimbursed for such payments, with interest.  (*Royal Arcanum* v. *McKnight,* 238 Ill. 349.)  This is on the equitable principle that one who has the legal right to the fund ought not to be permitted to appropriate the benefit of another's money which he has paid in good faith in reliance upon his title as beneficiary and which has actually produced the fund.  This principle does not, however, extend to the creation of a lien in favor of a creditor of the member, even though the indebtedness was incurred on the faith of an agreement to name the creditor as beneficiary.  To permit such a lien would disregard the distinctive feature of mutual benefit associations and would permit an easy evasion of the limitations placed upon them by the statutes and their charters.  The object of such associations is usually stated to be the payment of a fund to certain classes of beneficiaries having peculiar claims upon the members, not including their creditors.  It is sometimes specially provided that such fund shall not be liable to be applied by any legal or equitable process to the debts of either the member or the beneficiary. The object is to make it certain that the fund shall be paid only to the persons within the terms of the act, and the designation of a creditor as a beneficiary, unless creditors are within the terms of the act, is absolutely void. In case of such designation the heirs of the member are legally entitled to the fund.  The fact that the creditor has advanced the full amount of the policy on the faith of his designation as beneficiary does not make it less void or the

heirs less entitled to the fund, for the law absolutely prohibits such a relation between such an association and the creditors of a member. We have held that where there is a legally appointed beneficiary, a member may, upon a sufficient consideration, make a valid contract which will deprive him of the right to make an appointment of another beneficiary. (*McGrew* v. *McGrew,* 190 Ill. 604; *Royal Arcanum* v. *Tracy,* 169 id. 123.) In no case has it been decided that an ineligible beneficiary has a right to have his advances made to the member re-paid out of the proceeds of the certificate. All that he can claim is that he shall have restored to him what he has expended for the benefit of those who are entitled to the fund,—that is, the amount paid for assessments, and interest.

The appellants insist that the evidence of payments made by James E. Keefe is too vague and uncertain to justify a finding that any amount was due from Edward F. Keefe to James E. Keefe or that the latter paid from his own funds any of the assessments on account of this certificate, and that if he did make any such payments the amount is not shown by the evidence. From an examination of the evidence we think it fairly appears that all the assessments were paid by James E. Keefe, and while the amount is not ascertained with entire certainty, the amount stated by him ($619) is sustained by the evidence. He is entitled to be re-paid this amount, with interest. On March 20, 1908, pursuant to an order of the court, a certificate of deposit for $4937.86,—the balance due on the certificate after deducting attorneys' fees and costs,—was deposited in escrow with the Northern Trust Company to await the further order of the court. The amount due James E. Keefe should bear five per cent interest to the date of that deposit, amounting on that date to $866.60. After that date it should bear the rate of interest fixed for the certificate of deposit.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to enter a decree in accordance with this opinion. The appellees will pay the costs in all the courts.

*Reversed and remanded, with directions.*