[No. 18557.   Department Two.   November 19, 1924.]

# C. B. Shoemaker, *Appellant*, v. White-Dulaney Company *et al., Respondents.*[1]

Chattel Mortgages (49-1, 49-2)—Proceeds—Accounting—Rights and Liabilities of Purchaser. The purchaser of a wheat crop subject to chattel mortgages, paying full value to the persons entitled to the proceeds, may pay laborer's liens authorized in a mortgage as advances whether the liens were filed or not, and interested parties have their day in court to contest the liens in an action to marshal the assets.

Same (31)—Construction—Future Advances. In such a case, it may also pay for sacks which were necessarily used in harvesting the wheat; also it may pay an advancement of $6,000 secured by the mortgage made by a mortgagee to the mortgagor for the purpose of caring for and harvesting the crop.

Same (37, 40)—Marshaling Assets (1)—Scope of Lien—Priorities of Mortgages—Debt Secured by Different Mortgages. In an action to marshal assets, in which it appears that a bank has a first lien upon a crop of wheat and upon other personal property of the mortgagor, it should be required to exhaust its security on the other property and credit the same on its debts, before excluding a second mortgagee of the wheat from participating in the proceeds of a sale of the crop.

Reformation of Instruments (3, 12)—Persons Entitled—Parties—Estoppel by Judgment. Judgment to reform the description in a second mortgage upon a crop of wheat, which does not affect the security of the first mortgage, cannot be objected to by the first mortgagee because it was not made a party to the action.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered November 3, 1923, upon findings in favor of the defendants, dismissing an action for equitable relief, tried to the court. Affirmed in part and reversed in part.

*Driscoll & Horrigan,* for appellant.

*Voorhees & Canfield* and *Hamblen & Gilbert,* for respondent.

[1] Reported in 230 Pac. 162.

BRIDGES, J.—The defendant Hadley, a farmer in eastern Washington, gave a mortgage to the Farmers State Bank of Connell, this state, to secure an indebtedness of $12,500. It covered wheat to be grown during the year 1921 on certain described lands in Franklin county, and also sixty head of horses, some other live stock, and certain farming implements. It was regular upon its face and was duly filed with the county auditor. Later, it and the evidence of indebtedness which it secured were assigned to the defendant Fidelity National Bank of Spokane. Thereafter that institution loaned Hadley additional sums to the amount of about $6,000, to be used in caring for and harvesting the wheat, and which additional sums it claims are secured by its mortgage.

After giving respondent's mortgage, Hadley gave a second mortgage to the Pasco Flour Mills Company to secure an indebtedness of $3,200. At the time of the giving of this mortgage, an arrangement was made between the flour company and the Farmers State Bank, which at that time held the first mortgage, that the latter would, and it did, release in favor of the flour company, 2,500 bushels of wheat to be grown upon the lands covered by its mortgage. The effect of this was to make the flour company's mortgage a first lien on 2,500 bushels of wheat to be grown on the lands covered by both mortgages. The second mortgage covered, or was intended to cover, substantially the same crop of wheat which had been previously mortgaged to the Farmers State Bank, but did not cover any other property. This second mortgage and the indebtedness it secured were later assigned to the plaintiff.

After all the transactions mentioned, Hadley harvested the wheat and sold it to White-Dulaney Com-

pany for what appears to have been the then market price. This purchaser, after deducting certain sums to discharge labor liens and to pay a bill for sacks furnished by it, paid the balance of the purchase price to the Fidelity National Bank, which in turn paid, or caused to be paid, to the plaintiff or its assignor the value of the 2,500 bushels of wheat released as above indicated. The payments so received by the Fidelity National Bank did not discharge its mortgage indebtedness, including its additional advancements, nor did the payment made to the plaintiff discharge its indebtedness. Thereafter the plaintiff brought this action for the purpose of collecting the balance due it. It has appealed from a judgment denying it any relief and dismissing its action.

It seems to us that this case has been greatly, and perhaps naturally, confused because of the difficulty of determining its nature. The pleadings are long and no good can be accomplished by here dissecting them. We think it must be conceded that the amended complaint sounded chiefly in conversion, although there were allegations with reference to marshaling of assets and accounting. But whatever may be said about the complaint, we are convinced that the answers and re-. plies made the case one for the marshaling of assets and accounting, and we shall so treat it.

Let us first dispose of the case in so far as it affects the White-Dulaney Company.

Whatever may be the technical rights and liabilities of a purchaser of wheat raised for sale against which there are two mortgages, it ought to be the law that, where he has agreed to pay full value for the property and the purchase was in good faith, and he has paid the purchase money to the persons entitled to receive it, he will in equity be protected. Under those circum-

stances, the purchase price stands in the place of the mortgaged property, and if the money be paid to the right person no one can be heard to complain, because no one has been damaged. This would apply to an action for conversion as well as one for an accounting. *Thompson v. Anderson,* 86 Iowa 703, 53 N. W. 418.

The purchase price was something over $17,000, and the question is, was this sum paid to the persons who were entitled to it. Several hundred dollars were paid to certain laborers who had filed liens on the wheat in question, and it is contended by appellant that neither the purchaser nor the Fidelity National Bank had any right to pay these liens because they were on their face insufficient, and because, in any event, the appellant was entitled to have its day in court to contest them. The latter objection is not tenable because appellant has its day in court in this case. We think these payments were properly made. In the first place, the testimony shows that the lienors had actually worked on the wheat in question, harvesting it and hauling it to market, and the liens were, in our opinion, sufficient. In the next place, the mortgage held by the bank provided that not only should it secure the original loan of $12,500, but "also all amounts loaned, advanced or expended by the mortgagee, its successors or assigns, for the maintenance or transportation of the said property or for any purpose connected therewith." Under this provision, the Fidelity National Bank could have paid these laborers or advanced the money for that purpose, and this whether liens were filed or not. The fact that the money was not paid until after the liens were filed cannot alter the situation.

Appellant complains that several hundred dollars of the purchase price were paid for certain sacks which were used in harvesting the wheat. The testimony

shows that these sacks were not only used but necessarily so, and payment therefor was properly made under the above quoted provision of the mortgage. *Eltopia Finance Co. v. Colley*, 126 Wash. 554, 219 Pac. 24.

Another contention is that no part of the purchase price was entitled to be paid on account of the $6,000 advancement which had been made by the bank to the mortgagor for the purpose of caring for and harvesting this wheat. The testimony shows that this money was advanced and used for the purposes mentioned, and there can be no question but what such advancements were authorized by the bank's mortgage and became secured thereby as much and to the same extent as the original indebtedness. *Eltopia Finance Co. v. Colley, supra.*

We conclude, therefore, that the purchase price was applied in a proper manner, and that the appellant can have no cause of action against White-Dulaney Company because it was in no wise prejudiced or damaged by that company.

But it seems to us that the Fidelity National Bank is, in equity, in a very different situation from that occupied by the White-Dulaney Company. The doctrine of marshaling of assets may be applied to it, but not to the White-Dulaney Company. The bank and the appellant each had mortgages covering the wheat and the bank's mortgage was the first lien, but its mortgage also covered property which was not included in the appellant's mortgage. It is an almost universal rule that, under these circumstances, the courts will require a marshaling of assets, that is to say, will require the person holding the first mortgage to make what he can out of the property upon which he alone has security, in order that the second mortgagee may,

if possible, have recourse to the property which is covered by both the mortgages.

"If, for instance, one creditor has a prior lien on two parcels of land, while the other has a junior lien on only one of the parcels, the parcel not subject to the junior lien should first be sold to satisfy the prior lien, and then, if necessary, the land subject to both liens should be sold and the proceeds applied in the order of priority of the two liens." 18 R. C. L. 455.

As between the appellant and the bank, it was the duty of the latter, by foreclosure and sale or otherwise, to make as much as it could out of the property which was covered by its mortgage only, and if sufficient was not thus obtained, then the wheat might be sold, and if there was any surplus of funds it should be paid to the second mortgagee.

It appears, however, that there was a misdescription in the appellant's second mortgage, that is, the mortgage as recorded was not a second lien, nor any lien at all on a considerable portion of the wheat. But the record shows that, prior to the commencement of this action, the appellant had instituted suit against the mortgagor and others, but not the bank, for a reformation of its mortgage and for foreclosure, and in that action a judgment had been entered reforming the mortgage so that, as reformed, it covered the wheat in question. It having been the intention of the mortgagor and the second mortgagee to mortgage the same property covered by the first mortgage, the bank is in no position to claim that such intention was not binding on it, or that the judgment reforming the mortgage did not bind it because it was not a party to that action. It is not injured by a reformation of the mortgage. Its security remains identically the same whether the second mortgage be reformed or not.

It is our opinion that the trial court should have required the Fidelity National Bank to make what it could by foreclosure and sale or otherwise out of the property which was alone covered by its mortgage and that such sums should have been first credited on its indebtedness, and if enough was not thus made to discharge its indebtedness, then it was entitled to such portion of the net proceeds of the sale of the wheat as was necessary to pay it, and that if any surplus remained the appellant would be entitled to it.

The judgment is affirmed as to the White-Dulaney Company, and reversed and the cause remanded as to the Fidelity National Bank, with instructions to the lower court to proceed as here indicated.

MAIN, C. J., FULLERTON, MITCHELL, and PEMBERTON JJ., concur.

## ON REHEARING.

[*En Banc.* February 6, 1925.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adhere to the Departmental opinion heretofore filed herein. The disposition there directed is therefore the order of this court.