**MEYER v. MEYER.**

No. 10206.

Circuit Court of Appeals, Eighth Circuit.

Aug. 13, 1935.

Perry F. Loucks, of Watertown, S. D. (Alan L. Austin, of Watertown, S. D., on the brief), for appellant.

St. Clair Smith, of Aberdeen, S. D. (A. E. Schirman, of Salem, Or., and R. F. Williamson, of Aberdeen, S. D., on the brief), for appellee.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

The Order of United Commercial Travelers of America filed an interpleader action (subsection 26, section 41, title 28 USCA) on a policy of accident insurance on the life of Ernest H. Meyer (who was killed on May 17, 1933), and paid the full policy proceeds into court. Hattie L. Meyer, appellant here, and Gerda Marie Meyer, appellee, interpleaded—each filing an answer and cross-bill wherein each claimed the entire proceeds. After various pleadings, the matter came before the trial court on motions of appellee to strike the second amended answer and second amended cross-bill of appellant on the grounds that they were insufficient to entitle recovery by appellant or to prevent recovery by appellee. These motions were sustained. Thereafter, an order was entered dismissing appellant's counterclaim and a decree adjudging appellee entitled to the policy proceeds. From this decree, Hattie L. Meyer brings this appeal.

Three main contentions are presented here. The first is that appellant is entitled to recover because she is the named beneficiary. The second is that she is entitled to recover because of certain contracts between her and the insured that she should receive the benefits from this policy. The third is that appellee has no standing as a claimant to the benefits of such policy.

I. Rights as Named Beneficiary.

Admitted by the pleadings, the facts as to this issue are as follows: The Order of United Commercial Travelers of America is an association under the statutes of Ohio existing for the sole benefit of its members and their beneficiaries and not for profit, having a lodge system with ritualistic form of work and representative form of government and with its main offices in Ohio. It has a constitution and by-laws framed under Ohio Statutes. It issues to its members insurance certificates covering injury and death from accidental causes. It was licensed to do business in South Dakota and had a lodge (called "council") at Watertown, S. D. In 1915, Ernest H. Meyer became a member of that council and, as such, received an insurance certificate, applied for and delivered at that place. Therein he named, as beneficiary, the appellant who was then his wife. In 1918, they were divorced and so remained until his death in 1933. He never applied for nor was there any change in the beneficiary.

The insurance certificate expressly declared that the association was incorporated under the laws of Ohio. It provided that he was "entitled to all the rights and benefits which may be provided for such 'Class A' Insured members in and by the Constitution of said Order in force and effect at the time any accident occurs" and that:

"This Certificate, the Constitution, By-Laws and Articles of Incorporation of said Order, together with the application for insurance signed by said Insured Member, shall constitute the contract between said Order and said Insured Member and shall govern the payment of benefits, and any changes, additions or amendments to said Constitution, By-Laws or Articles of Incorporation, hereafter duly made, shall bind said Order and said Insured Member and his beneficiary or beneficiaries, and shall govern and control the contract in all respects."

Attached to and part of the certificate was the application therefor which included the following:

"Note: By the Statutes of Ohio, the 'payment of death benefits shall be confined to the wife, relatives by blood to the fourth degree, father-in-law, mother-in-law, son-in-law, daughter-in-law, step-father, step-mother, step-children, children by legal adoption, or to a person or persons dependent upon the member,' and no certificate shall be made payable to 'myself', 'my estate', 'my heirs' or 'persons named in my will' or to any beneficiary other

than designated by the statutes above cited.

"4. Payment in case of death by accident under the provisions of the Constitution shall be made to——

Beneficiary's christian and surname in full
Hattie L. Meyer
Residence-Street .............City
Florence State So. Dak.
Whose relationship to me is that of Wife."

The application also contained the following:

"I Hereby Agree, To accept the Certificates of Membership and Insurance issued upon this application, subject to all the provisions, conditions and limitations of the Constitution, laws, rules and regulations of said Order as they now exist or as they may hereafter be added to, revised, or amended."

At the time this certificate issued, the constitution contained two provisions as follows:

"Each insured member shall be entitled to name the beneficiary to whom he desires payment to be made in case of his death under the terms of this article, and to make any change or changes in said beneficiary at any time, but such beneficiary shall be confined to the wife, relative by blood to the fourth degree, father-in-law, mother-in-law, son-in-law, daughter-in-law, step-father, step-mother, step-children, children by legal adoption, or to a person or persons dependent upon the insured member." Article VII, § 13.

"If all named beneficiaries be dead or no beneficiary be named who can take under the provision of this section, payment of benefits due shall be made to the widow of the member if living, if not, then to the child or children of the deceased living at that time. * * *" Article IV, § 10.

In 1923, article IV, § 10, was amended (and so remained until death of insured) as follows: "Where a member has designated his wife as beneficiary and subsequently a decree of 'divorce avincula' has been recorded by a court of competent jurisdiction, then in such case said beneficiary loses all rights of benefit under said certificate and constitution."

And in 1925, the above article VII, § 13, was amended (becoming part of section 10 of article IV and so remaining until death of insured) as follows: "Sec. 10. Each Insured Member shall name the beneficiary to whom he desires payment to be made in case of his death under the terms of this Article and may make any change or changes in said beneficiary at any time, such beneficiary shall be confined to the wife, relative by blood to the fourth degree, father-in-law, mother-in-law, son-in-law, daughter-in-law, step-father, step-mother, step-children, children by legal adoption, or to a person or persons dependent upon the Insured Member."

The pertinent statute law of Ohio is shown in the above quotations from the constitution of the order—the quoted amendments being in compliance with statutory requirements then enacted.

In 1931, the insured requested and was issued a duplicate certificate because of loss by him of the one originally issued to him. At the time of this reissue, the order had notice and knowledge that appellant had been divorced from insured for many years.

At the times here involved, the order was licensed to do business in South Dakota under statutes which included the provision (Revised Civil Code 1903, § 712 [Rev. Code S. D. 1919, § 9358]) that: "No corporation or association organized or operating under this article shall issue any certificate of membership or policy to any person under the age of fifteen years or over the age of sixty years, nor unless the beneficiary under such certificate shall be husband, wife, relative, legal representative, heir or legatee of such insured member, nor shall any such certificate be assigned," etc.

The main cleavage as to this issue is whether the law of South Dakota or the law of Ohio governs this contract—whether the law of the place where the contract was made or the law of the domicile of the order prevails.

At the time this certificate was issued the laws of both states limited those who might be made beneficiaries thereunder. The difference between the laws being that the South Dakota statute applied its limitation to the *designation* of beneficiary and that of Ohio to the *payment* of benefits. This difference was one as to status at issue of the certificate and as to status at time payment of benefit became due. Both statutes included a "wife" as a permissible beneficiary. Appellant was such wife when the certificate issued. She was

58

not such when Meyer was killed. She was the named beneficiary at all times.

■ This "order" is a fraternal beneficial association. As to such entities, the Supreme Court of the United States has firmly established the rule that the law of the domicile of the association governs "in respect of the fund from which their [the members] rights are to be enforced." Modern Woodmen v. Mixer, 267 U. S. 544, 551, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384; Supreme Council of Royal Arcanum v. Green, 237 U. S. 531, 542, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771. Obviously, a requirement as to whom or as to what classes of persons shall alone be entitled to payment from such fund is within the rule. As to the relevancy of this rule, "it does not matter that the member joined in another State." Modern Woodmen v. Mixer, supra, 267 U. S. 544, page 551, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384.

■ Since the law of Ohio—the place of domicile—required the defined permissible classes of beneficiaries to be such at the time the right to payment of benefits accrued and since appellant did not come within such classes at the time Meyer died, she has no standing as a claimant because of the bare fact that she was the named beneficiary at that time.

■ Another contention in respect to this issue is that the order issued a duplicate certificate (in which appellant was named as beneficiary) in 1931 with full knowledge that she was at that time and for some years had been divorced from Meyer. From this situation, an estoppel or waiver is urged against denial of her right to recover. Such a situation is, generally speaking, sufficient to create a waiver,—possibly an estoppel. The crux is whether the order had power to make such a waiver. In effect, the waiver urged is that the order, by such action, consented that it would not insist upon its rights of restriction of payment to designated classes of beneficiaries. But the order is not free to make such consent. The provision as to classes of beneficiaries is not one arising merely from the exercise of a general corporate power to make designation of beneficiaries. It is a positive requirement of the law of its creation. No such waiver could be made by it without the consent of its creator, the state of Ohio. McGinness v. Su-

preme Council, Catholic Benev. Legion, 59 Ohio St. 531, 53 N. E. 54, and see National Union v. Keefe, 263 Ill. 453, 105 N. E. 319, Ann. Cas. 1915C, 271; Rollins v. Independent Order, 124 Kan. 166, 257 P. 754; Logan v. Modern Woodmen, 137 Minn. 221, 163 N. W. 292, 2 A. L. R. 1676; 45 C. J. pp. 171, 172.

■■ A further contention is that the order has waived its right to insist upon this beneficiary requirement because it has interpleaded, paid the fund into court, and declared no interest as to whom it shall be paid. While the order has done these things and is no longer an active participant in this controversy between these two claimants, yet it had no power of waiver through any method. Even had it, generally speaking, a power of waiver, it could not, after the rights of all parties had been fixed by the death of Meyer, exercise it to change or affect those rights. Sanders v. Fertilizer Works, 292 U. S. 190, 200, 54 S. Ct. 677, 78 L. Ed. 1206, 91 A. L. R. 950. Possibly, the better view to take of this particular contention is that it is really one to the effect that appellee cannot take advantage of this requirement. It is a general rule of law that many ultra vires corporate acts can be questioned only by the state (of incorporation) under certain situations or circumstances. But it is not the law that one whose rights are affected by an ultra vires act cannot urge such matter. Here, the death of Meyer definitely fixed the rights, whatever they may be, both of appellant and of appellee as to payment under this certificate. No waiver thereafter by the order could change those rights without consent of the parties affected thereby and no consent of appellee is present.

We must conclude that appellant has no valid claim to these proceeds, based solely upon the designation of her as beneficiary at the time of death of Meyer.

II. Rights Under the Contract.

■ This issue is the contention of appellant that she had a binding legal contract with the insured whereby she was to receive the proceeds from this certificate. But the subject-matter of the contract was beyond the control of the parties thereto. The direction of the payment of benefits under this certificate was definitely limited by the law of Ohio. We have above held that the order could not exceed such limits. No more can

the insured. His power to designate the person to whom payment could be made is likewise limited. It is by no means the situation of a person to whom money will become due and who has an unlimited power of designation of the one to whom payment shall be made when due.

If the contract gave appellant any rights, such would be to enforce her claim against the order. Clearly, if she attempted to do that, she could not meet the attack that she was outside the classes to whom payment was allowable. To recognize her claim (so based) would be to concede to the insured the power to nullify completely the statutory requirements of Ohio and to compel the order to do what it was expressly denied power, under that law, to do.

The situation here is vitally different from that determined in Supreme Council of Royal Arcanum v. Behrend, 247 U. S. 394, 38 S. Ct. 522, 62 L. Ed. 1182, 1 A. L. R. 966, and Chaffee v. Locomotive Engineers' M. L. & A. Ass'n, 67 F.(2d) 279 (C. C. A. 10), relied upon by appellant. In neither of those cases was there any issue as to the effect of a limitation of classes of permissible beneficiaries contained in the certificate or the laws governing the certificate. Each of those cases involved a dispute between an earlier and a later named beneficiary where a change in beneficiaries had been made by the insured. In the Behrend Case the first beneficiary claimed a vested right which could not be altered by the later change of beneficiary (such right being based on her payment of most of the dues thereon) and claimed no valid change had been made because the certificate required surrender of the original certificate upon change of beneficiary and the certificate had always remained in her possession. In the course of the opinion the court stated that ordinarily a beneficiary of a fraternal benefit society insurance certificate had no vested rights therein, but added that such rights might arise from contract. As to such it used an expression (247 U. S. 394, page 399, 400, 38 S. Ct. 522, 524, 62 L. Ed. 1182, 1 A. L. R. 966), significant here, as follows (italics added): "A contract of that nature may be enforced by appropriate proceeding *if consistent* with the general law and *with the laws of the associa-*

*tion."* The Chaffee Case upheld such a contract, citing the Behrend Case.

Appellant urges that the obligations of the contract placed her in the status of a "dependent" within the provisions of the certificate and of the Ohio Statutes (Gen. Code Ohio, § 9467), which permit a "dependent" to be a beneficiary, and since she is the named beneficiary, she should recover. This contention involves construction of such certificate and statute, and, thereafter, determination of whether the contract has the effect of making appellant a dependent within the meaning so construed. The statement in the application (in part a quotation from the statute) is as follows:

"Note: By the Statutes of Ohio, the 'payment of death benefits shall be confined to the wife, relatives by blood to the fourth degree, father-in-law, mother-in-law, son-in-law, daughter-in-law, stepfather, step-mother, step-children, children by legal adoption, or to a person or persons dependent upon the member,' and no certificate shall be made payable to 'myself', 'my estate', 'my heirs' or 'persons named in my will' or to any beneficiary other than designated by the statutes above cited."

This provision clearly uses "person or persons dependent upon the member" in the sense of dependent for some degree of financial support and care. While the entire provision otherwise has to do with some character or degree of family relationship, this provision as to dependents seems in addition thereto and as permissibly including dependency as a matter of fact, however arising or created. We see no reason why it may not cover a dependency created by contract.

Does this contract create such dependency? The last amended answer of appellant (admitted by the motion to strike) sets forth this contract and the circumstances surrounding it as follows:

"That on or about the 4th day of November, A. D. 1918, this defendant and the said Ernest H. Meyer, her husband, in lieu of alimony and in settlement of the duty of said Ernest H. Meyer to support and educate their minor son Burdette, entered into an agreement for the settlement of their property interests and for the custody, education and support of their son, Burdette Paul Meyer, under the terms of which agreement this De-

fendant assumed the responsibility for the care, custody, control and education of said son, subject to the provisions that in case of her death or disability so to do that the said Ernest H. Meyer would immediately assume all responsibility for the care, custody and education and support of said son, Burdette Paul Meyer, and that as a part of said formal agreement entered into between said parties it was agreed by the said Ernest H. Meyer that he would pay the premiums to maturity on a certain policy of life insurance issued to him by the Dakota Mutual Life Insurance Company of Watertown, South Dakota, in the sum of $1000.00, payable to Burdette Paul Meyer, during the lifetime of the said son, Burdette Paul Meyer, and that as a consideration for the making of such formal agreement by this Defendant the said Ernest H. Meyer agreed with this Defendant that he would continue during his lifetime to maintain in full force and effect the policy of insurance in the Order of United Commercial Travelers of America, a corporation, duly described in this second amended answer and counterclaim, with the said Defendant, Hattie L. Meyer, as sole beneficiary therein; that pursuant to such agreements made between this Defendant and the said Ernest H. Meyer, this Defendant did continue to support and educate said son, Burdette Paul Meyer; that on or about the 31st day of December, A. D. 1925, the said Ernest H. Meyer and this Defendant, at the request of the said Ernest H. Meyer, entered into a further agreement under which this Defendant consented to the said Ernest H. Meyer cancelling the policy for $1,000.00 in the Dakota Mutual Life Insurance Company, now changed to Midland National Life Insurance Company, at such time as the said Ernest H. Meyer desired to cancel said policy, and under the terms of which agreement this Defendant agreed to continue sending the son of said parties, Burdette Paul Meyer, to high school and to·finance his expenses for such college work as he might desire to take, and in consideration of which agreements on the part of this Defendant the said Ernest H. Meyer agreed with this Defendant that he would continue to carry during his lifetime the said policy of insurance in the United Commercial Travelers of America payable to this Defendant as beneficiary; that pursuant to said further agreement the said Ernest H.

Meyer did continue to carry the said policy of insurance in the United Commercial Travelers of America with this Defendant as beneficiary, including obtaining a duplicate certificate in 1931, as above set out; that the said Ernest H. Meyer subsequently and on or about July 28th, 1928, withdrew a portion of the surrender value of the said $1,000.00 policy in the Midland National Life Insurance Company and completed the surrender and cancellation of said policy on or about March 11th, A. D. 1931; that on or about the 1st day of March, A. D. 1931, and while this Defendant and her son, Burdette Paul Meyer, were the only persons, who could have any interest in said insurance policy issued by the complainant to Ernest H. Meyer, the said Burdette Paul Meyer consented to the said Ernest H. Meyer surrendering said·Midland National Life Insurance Company policy, and obtaining the cash surrender value thereof, upon the express condition that the said Ernest H. Meyer should continue to carry, during his lifetime, said policy of insurance with the complainant, above described, with his mother named as.beneficiary therein; that this Defendant continued at all times to carry out her portion of said agreements so made with the said Ernest H. Meyer and did continue to·finance the said son, Burdette Paul Meyer, through his high school course, and did continue to finance him in college as long as he desired to go to college."

The situation created by this quotation is that, as part of a divorce property settlement, Meyer agreed to keep appellant as the beneficiary under this certificate. Clearly such an agreement created no "dependent" status. Theretofore, there was such status arising from the marital relation. The obligations so arising might have been continued after divorce, by contract or otherwise. But that was not the effect of this contract. Its very purpose was to do away with dependency.

### III. Status of Appellee.

This contention arises as follows: In the last amended answer of appellant she sets forth that, after the divorce from her, Meyer married Maude Morrison; that, thereafter, this second wife brought divorce proceedings against Meyer in a circuit court of South Dakota; that she procured "a purported service" therein upon Meyer in.Wyoming; that the summons and complaint in that action were not

filed with the clerk of said circuit court until after the purported service; that a divorce decree was entered solely upon such service; that the court had no "jurisdiction of said action or the subject matter thereof by reason of the fact that no service of the Summons and Complaint was ever made upon the said Defendant personally within the State of South Dakota, or by publication or personal service outside of the State of South Dakota after the filing of said Summons and Complaint in the office of the Clerk of the Circuit Court of Codington County, South Dakota"; that this decree was a nullity; that the subsequent marriage of Meyer and appellee was a nullity; and that appellee was never the wife of and is not the widow of Meyer. The prayer of the answer was for decree against appellee and for decree in favor of appellant.

Appellant states this contention as follows: "The whole point which we are making in connection with this matter is that the requirement for filing a complaint before publication, and recital in the summons of the time and place of filing the complaint, has always been in our statute, and still remains, although the statute has been amended to permit personal service outside the state, as the equal, or equivalent of service by publications and mailing, and that, therefore, it is essential to the validity of the service outside of the state that the complaint be first filed and the summons as served advise the defendant of the time and place of the filing."

The trial court found that appellee was the lawful wife of Meyer at the time of his death.

Appellee defends the validity of the above divorce decree, but also challenges the right of appellant to question that decree. Without examination of the validity of such decree, it must be held that appellant is not in legal position to attack such validity. Obviously, such an attack by appellant is entirely collateral. No one can collaterally attack a judgment or decree unless he or she is injuriously affected thereby and will be benefited if it be set aside. Michaels v. Post, 21 Wall. 398, 426, 427, 22 L. Ed. 520; Northern P. Ry. Co. v. Boyd, 177 F. 804, 821 (C. C. A. 9), affirmed 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931; The W. Talbot Dodge, 15 F.(2d) 459, 462 (D. C. N. Y.); Magevney v. Karsch, 167 Tenn. 32, 65 S.W.(2d) 562, 568, 92 A. L. R. 343; State Mortgage Corp. v. Traylor, 120 Tex. 148, 36 S.W.(2d) 440, 443; Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 387, 11 L. R. A. (N. S.) 803, 118 Am. St. Rep. 612, 11 Ann. Cas. 348; Freeman on Judgments (5th Ed.) Vol. 1, pp. 636, 637, § 319; and see Shoemaker v. White-Dulaney Co., 131 Wash. 347, 230 P. 162, 164, on rehearing 132 Wash. 699, 232 P. 695. Here appellant is in no respect affected by this divorce decree. If it were declared void, she would in nowise profit therefrom. Her rights depend solely upon other matters not at all related to this divorce decree.

### Conclusion.

The parties have briefed and presented this appeal with great care. They argue some propositions not discussed herein, but we find disposition of them unnecessary to determination of the appeal. They have diligently searched and cited the authorities and we have carefully examined such as bear upon the matters deemed essential to disposition of the case. Some of the citations from state courts uphold some of the contentions of appellant, but we deem the Supreme Court decisions in the Mixer and Green Cases controlling as to the main issues here. The decree of the trial court is right and is affirmed.